**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Multi-Tech Systems, Inc.,

Plaintiff,

v.

VocalTec Communications, Inc., and
VocalTec Communications, Ltd.,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-1541 ADM/RLE

---

Misti Nelc, Esq., and Kevin Conneely, Esq., Robins Kaplan Miller & Ciresi LLP, Minneapolis, Minnesota, appeared for and on behalf of the Plaintiff.

Allan Sternstein, Esq., Brinks Hofer Gilson & Lione, Chicago, Illinois, and David Miller, Esq., Bowman & Brooke LLP, Minneapolis, Minnesota, appeared for and on behalf of the Defendants.

---

## I. INTRODUCTION

On February 15, 2000, Plaintiff Multi-Tech Systems, Inc. ("Plaintiff") commenced a patent infringement suit against Defendants.[1] On November 16, 2000, the undersigned United States District Judge heard Defendant VocalTec Communications, Ltd.'s ("VocalTec Ltd") Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 17] pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons set forth below, VocalTec Ltd's motion is denied.

## II. BACKGROUND

Plaintiff is a Minnesota corporation with its principal place of business in Moundsview, Minnesota. *See* Compl. ¶ 1. Plaintiff designs, manufactures, and sells data communications

[1] The original action, *Multi-Tech v. Net2Phone, Inc., et al.*, Case No. 00-346 ADM/RLE, which included ten defendants, was severed into seven cases in an Order dated June 26, 2000 [Doc. No. 1]. This case is one of them.

DEC 04 2000
FILED
[illegible] DOSAL, CLERK
JUDGMENT [illegible]
DEPUTY CLERK

technology. *Id.* VocalTec Ltd is an Israeli corporation with its principal place of business in Herzliya, Israel. *Id.* ¶ 4. VocalTec Ltd maintains no offices, employees, or agents in Minnesota. Defendant VocalTec Communications, Inc., ("VocalTec Inc") is a Delaware corporation with its principal place of business in Fort Lee, New Jersey.[2] *Id.* ¶ 3. VocalTec Ltd is the corporate parent of VocalTec Inc. *Id.* ¶4. Both VocalTec Ltd and VocalTec Inc make, use, offer for sale, and sell products and services that allow users to engage in telephone calls over communication lines using Internet Protocol. *Id.* ¶ 19. Using the software products provided by VocalTec Ltd and VocalTec Inc, a consumer can make telephone calls between a personal computer and a telephone.[3] *Id.*

Plaintiff alleges that VocalTec Ltd and VocalTec Inc have infringed four of its patents relating to computer-based communication systems, including the use of computers to transfer data, voice and/or video in packet form over a communications line. *See* Compl. ¶¶ 1-2. VocalTec Ltd's allegedly infringing software product is called Internet Phone, which enables a user to make a telephone call from a computer to a phone, or from a computer to another computer. *See* Nelc Aff. ¶ 3 Ex. 1 at 2-3. Plaintiff alleges that VocalTec Ltd directly and contributorily infringe its patents by offering for sale, selling, and encouraging use of their infringing software on their website and through distributors. *See* Mem. Oppos., p. 3.

On May 12, 1999, Plaintiff's counsel purchased Internet Phone in a Minnesota store. *See* Schutz Aff. ¶ 3 Ex. 1. This version of Internet Phone was packaged with "VocalTec

---

[2] VocalTec Inc is not challenging personal jurisdiction in this case.

[3] This software also facilitates telephone calls from personal computer to personal computer, phone to personal computer, and phone to phone.

Communications Ltd." printed on two sides of the box. *Id.* ¶ 4 Ex. 2 at 2, 4. The enclosed compact disk, which contains the Internet Phone software, bears VocalTec Ltd's name, and explains that "VocalTec" and "Internet Phone . . . are . . . trademarks of VocalTec Communications Ltd." *Id.* ¶ 5 Ex. 3. "VocalTec Communications Ltd." is printed on the front and back covers of the accompanying user manual. *Id.* ¶ 6 Ex. 4. The manual relates that the software product was "Made in Israel." *Id.* The manual lists addresses for VocalTec Ltd in Israel and VocalTec Inc in New Jersey. *Id.* ¶ 8 Ex. 6. The final page of the user manual includes a contract entitled "Software License Agreement and Limited Warranty." *Id.* ¶ 9 Ex. 7. The language of the agreement states that "[b]y opening this package, you indicate your complete and unconditional acceptance to the terms and conditions below. This license agreement represents the entire agreement concerning the program between you and VocalTec Communications Ltd." *Id.*

Internet Phone is available for Minnesotans to purchase through the Internet web sites www.cdw.com and www.amazon.com. *See* Nelc Aff. ¶¶ 4-5 Exs. 2-3. VocalTec Ltd's Internet Phone has been purchased through www.cdw.com, which allows registration of billing and shipping information on-line and payment with a credit card. *Id.* ¶ 6 Ex. 4, ¶ 7 Ex. 5.

VocalTec Ltd's Internet Phone also is available to Minnesotans on VocalTec Ltd's web site, www.VocalTec.com, where visitors can register, download and use the allegedly infringing software product. *See* Nelc Aff. ¶ 8 Ex. 6. Before visitors can download Internet Phone from VocalTec Ltd's web site, they must register by providing personal information, including name, e-mail address, phone number, and postal address. *Id.* The information entry boxes include a directory drop box for "State (US only)," which enables a registrant to select a state from the list.

Minnesota is listed in the state directory. *Id.* ¶ 8 Ex. 6 at 2. Additionally, VocalTec Ltd requires visitors to enter into a contract with VocalTec Ltd before downloading and installing the Internet Phone software. *Id.* ¶ 9 Ex. 7. This "Software License Agreement" is between a user and "VocalTec Communications Ltd." *Id.* A visitor must accept the "terms and conditions" of the Software License Agreement by clicking a "yes" button on the screen before the Internet Phone software can be installed onto the visitor's computer. *Id.* The installed Internet Phone software informs the user that it is a product of VocalTec Ltd. *Id.* ¶ 10 Ex. 8.

## III. DISCUSSION

Since 1877, constitutional due process requirements have protected defendants from the unfair exercise of personal jurisdiction. *See Pennoyer v. Neff*, 95 U.S. 714 (1877). Interpreting the Due Process Clause, the Supreme Court has declared that "personal jurisdiction over a nonresident defendant is proper only if the defendant has certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). VocalTec Ltd argues that this Court may not properly exercise personal jurisdiction over it because it is an Israeli corporation having no contacts with Minnesota. *See* Def.'s Mem. Supp., at 1. Because this challenge to personal jurisdiction is made in a motion to dismiss,[4] Plaintiff need only submit evidence that, when viewed in the light most favorable to Plaintiff, establishes a prima facie case of personal jurisdiction. *See Digi-Tel Holdings, Inc. v. Proteq*

[4] Plaintiff bears the ultimate burden at trial to establish personal jurisdiction by a preponderance of the evidence. *See Digi-Tel Holdings*, 89 F.3d at 522; *Aero Systems Eng'g., Inc. v. Opron, Inc.*, 21 F. Supp.2d 990, 995 (D. Minn. 1998).

*Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). All factual disputes must be resolved in Plaintiff's favor. *Id.* Plaintiff asserts that this Court has specific, as opposed to general, jurisdiction over VocalTec Ltd. Specific jurisdiction is conferred "when a controversy is related to or arises out of a defendant's contacts with the forum, and there is a relationship among the defendant, the forum, and the litigation." *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 697 (8th Cir. 1995).

Generally, an assessment of personal jurisdiction involves two independent inquiries: (1) whether the applicable state long-arm statute, Minnesota Statute § 543.19, is satisfied, and (2) whether this Court's exercise of jurisdiction is consistent with the requisites of due process. *See 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). The Eighth Circuit has recognized that Minnesota has interpreted its long-arm statute to be coextensive with the limits of due process. *See Minnesota Mining & Mfg.*, 63 F.3d at 697. Accordingly, the discussion will focus on whether exercising personal jurisdiction over VocalTec Ltd comports with federal due process. *See id.*; *see also 3D Systems*, 160 F.3d at 1376-77.

The Federal Circuit has exclusive jurisdiction over appeals from district courts whose jurisdiction is based on a claim arising under the patent laws of the United States. *3D Systems*, 160 F.3d at 1377. "Federal Circuit law, rather than regional circuit law, applies" when assessing the due process component of personal jurisdiction in the instant case because the claims arise under patent law. *Id.* To determine whether specific personal jurisdiction exists, the Federal Circuit's analysis considers (1) whether VocalTec Ltd purposefully directed its activities at residents of Minnesota, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair. *Id.* at 1378.

The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Defendants who "'reach out beyond one state' and create continuing relationships and obligations with the citizens of another state are subject to regulation and sanctions in the other State for consequences of their actions." *Burger King*, 471 U.S. at 475. Fifteen years ago, the Supreme Court observed that because of the substantial amount of commercial business transacted solely by wire communications, personal jurisdiction cannot be avoided "merely because the defendant did not *physically* enter the forum state." *Id.* at 476. Today, the Internet facilitates commercial endeavors throughout the world, without requiring physical presence in a forum state's marketplace.

Plaintiff argues personal jurisdiction should be exercised for three reasons: "(1) Internet Phone, VocalTec Ltd's infringing software product, has been purchased by Minnesotans in Minnesota stores; (2) Minnesotans can and have downloaded VocalTec Ltd's Internet Phone software product directly from www.VocalTec.com, which is VocalTec Ltd's web site; and (3) since the commencement of this action, Minnesotans have purchased in Minnesota and still can purchase Internet Phone from at least two Internet web sites: www.cdw.com and www.amazon.com." Pl.'s Mem. Opp. at 1.

The Federal Circuit has yet to address personal jurisdiction in the Internet context.[5] The District of Columbia's Court of Appeals, however, recently articulated the danger of basing personal jurisdiction on only accessibility of a defendant's website:

> This theory [of accessibility] simply cannot hold water. Indeed, under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction. The Due Process Clause exists, in part, to give "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *In the context of the Internet, [the defendant]'s expansive theory of personal jurisdiction would shred these constitutional assurances out of practical existence. Our sister circuits have not accepted such an approach, and neither shall we.* [Emphasis added].

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (citing *World-Wide Volkswagen*, 444 U.S. at 297). Plaintiff may not assert personal jurisdiction solely on the fact that VocalTec Ltd operates an Internet website containing references to Internet Phone. In determining whether this Court may constitutionally exercise personal jurisdiction over VocalTec Ltd, the "nature and quality of commercial activity that [VocalTec Ltd] conducts over the Internet" also must be assessed. *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). In other words, the nature and quality of the commercial activity conducted on the Internet determine whether VocalTec Ltd purposely availed itself of the benefits and protections

---

[5] Circuits addressing the issue include *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, (D.C. Cir. 2000); *Mink v. AAAA Development LLC*, 190 F.3d 333 (5th Cir. 1999); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997); *Benusan Restaurant Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2nd Cir. 1997); and *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996).

of Minnesota law.

In determining the nature and quality of Internet commercial activity, courts have found it helpful to assess the particular type of Internet use and its position along a "sliding scale." *Zippo*, 952 F. Supp. at 1124. Internet use falls into "a spectrum of three areas." *Mink*, 190 F.3d at 336. At one end of the spectrum, "a defendant clearly does business over the Internet by entering into contracts with residents of other states." *Id.* Activities conducted at this end of the spectrum generally support exercise of personal jurisdiction. *See id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)). At the other end of the spectrum, a defendant "merely establishes a passive website that does nothing more than advertise on the Internet." *Id.* Activities conducted at the "passive" end of the spectrum generally do not support exercise of personal jurisdiction. *Id.* (citing *Benusan Restaurant Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2nd Cir. 1997)). In the middle of the spectrum, a defendant's website "allows a user to exchange information with a host computer." *Id.* Activities conducted "mid-spectrum" are assessed to determine "the level of interactivity and commercial nature of the exchange of information that occurs" on the web page. *Id.*

Assessed in a light most favorable to Plaintiff, VocalTec Ltd's contacts with Minnesota exceed the passive end of the website spectrum. *See, e.g.*, *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) (posting a passive home page on the World Wide Web for advertising purposes was insufficient to subject the website's owner to personal jurisdiction). In *Zippo*, the court instructs that "[i]f the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet computer network, personal jurisdiction over defendant is proper." *Zippo*, 952 F. Supp. at 1124. Here,

there has been no discovery to date of knowing and *repeated* transmissions of Internet Phone software from VocalTec Ltd's website to Minnesota residents. However, there is evidence that visitors to VocalTec Ltd's website could register, download and use Internet Phone, the allegedly infringing software product. Such visitors must accept the terms of a Software License Agreement and thereby enter into a contract with VocalTec Ltd before Internet Phone could be installed onto their computers. Furthermore, VocalTec Ltd purposely availed itself for engagement in commercial activities with residents of Minnesota by including a state directory drop box listing Minnesota. Thus, VocalTec Ltd's activities with visitors on its interactive website[6] fall somewhere between the middle of the spectrum and the more active conducting business end of the spectrum of internet exchange. *See Biometics, LLC v. New Womyn, Inc.*, 112 F.Supp.2d 869, 873 (E.D. Mo. 2000) (finding "moderately interactive" web site sufficient to support exercise of personal jurisdiction in patent infringement suit). VocalTec Ltd's commercial activities over the Internet, marketed to Minnesota residents, support the exercise of personal jurisdiction.

Moreover, VocalTec Ltd's Internet Phone was purchased in a Minnesota store. Internet Phone also was purchased by a Minnesota resident from a retail website, www.cdw.com. The accompanying software licensing agreement essentially required that Minnesota residents enter into contracts with VocalTec Ltd before using Internet Phone. These additional contacts with

---

[6] Although VocalTec Ltd no longer offers Internet Phone for sale from its website, registered users may still download the programs and receive technical support. *See* VocalTec Ltd Website, *available at* http://www.VocalTec.com/consumer/consumer_frame.htm. Previously, VocalTec Ltd offered Internet Phone for sale at its website. *See* Press Release: VocalTec Ltd Ships Internet Phone Release 4, *available at* http://www.VocalTec.com/about/press/pr_ip42.htm.

Minnesota further support exercising personal jurisdiction over VocalTec Ltd. *See Compuserve*, 89 F.3d at 1265 (holding that placing a software product into the stream of commerce in the forum state, combined with entering contracts with forum state residents, constitute sufficient contacts to support the exercise of personal jurisdiction).

Next, it must be determined whether the cause of action arises out of or relates to these activities with the forum state. Patent infringement occurs when someone "without authority makes, uses, offers to sell or sells any patented invention." 35 U.S.C. § 271(a) (1994). By making Internet Phone, VocalTec Ltd allegedly is infringing on Plaintiff's patents. Further, by offering to sell and selling Internet Phone on its own website, on other websites such as www.cdw.com and www.amazon.com, and in Minnesota stores, VocalTec Ltd is engaged in an allegedly infringing act. Although VocalTec Ltd apparently no longer sells Internet Phone from its website, at one time it did, and personal jurisdiction is determined by conduct up to and including the time the action commenced. *See Haas v. A.M. King Indus., Inc.*, 28 F. Supp.2d 644, 649 (D. Utah 1998). Finally, for the purposes of the present motion only, the Court will assume that the use of Internet Phone itself infringes Plaintiff's patents. The relationship between infringing interactive technology and the "wrong" alleged is aptly addressed by one district court:

> [T]his case is unusual because the use of interactive technology itself allegedly infringes the plaintiff's patent. Specific personal jurisdiction depends on the nature and quality of the defendant's contacts with the forum, so obviously a case in which the contact itself is the wrong is a stronger case for jurisdiction than one in which the contact merely relates to the wrong.

*CoolSavings.com, Inc. v. IQ.Commerce Corp.*, 53 F. Supp.2d 1000, 1003 n.1 (N.D. Ill. 1999).

VocalTec Ltd's forum-related conduct of making Internet Phone available for use by Minnesota residents is the crux of the alleged infringement. Because contact between the user and VocalTec Ltd's Internet Phone is the "wrong," it presents an enhanced case for asserting jurisdiction. In sum, Plaintiff's claims of patent infringement arise out of Minnesota consumers' use of Internet Phone itself and VocalTec Ltd's distribution of the software to make such use possible.

The third factor of the analysis places the burden on VocalTec Ltd to "prove that jurisdiction would be constitutionally unreasonable." *3D Systems*, 160 F.3d at 1380. Constitutional unreasonableness is assessed under:

> a multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in the convenient forum and the forum state's interest in resolving controversies flowing from in-state events.. . . Put succinctly, "such defeats of otherwise constitutional personal jurisdiction 'are limited to the *rare situation* in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'"

*Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed Cir. 1996)(quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995) (internal citations omitted) (emphasis added). Plaintiff has an interest in maintaining its suit in this forum as a result of the purchase and use of the allegedly patent infringing Internet Phone by Minnesota residents. Additionally, the state of Minnesota has a strong interest in adjudicating injuries that occur within the state, including patent infringement actions. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed Cir. 1994); *Akro Corp.*, 45 F.3d at 1549. The availability of modern communications and transportation render VocalTec Ltd's burden to defend a lawsuit in a foreign court insufficient to outweigh Plaintiff's and Minnesota's interest in adjudicating the

dispute in this forum. *See id.* at 1569. VocalTec Ltd has failed to show that exercising personal jurisdiction would be inherently unfair or unreasonable.

VocalTec Ltd cites *Guinness Import Co. v. Mark VII Distrib., Inc.*, 153 F.3d 607 (8th Cir. 1998), and *Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369 (8th Cir. 1990), in support of its motion. However, the facts of those cases are inapposite to the case at hand. In *Guinness*, a foreign distributor sold beer to an importer and maintained no control over the beer after it passed title. In *Falkirk*, a foreign manufacturer sold cams to an importer, which subsequently sold the cams to the plaintiff for installation in its dragline. Here, by contrast, VocalTec Ltd purposely directs its software marketing efforts at Minnesota residents by listing Minnesota in the directory for registration on its interactive website, sells Internet Phone to Minnesota residents, requires Minnesota users of Internet Phone to contract with it under its licensing agreement, and provides technical support to users on its website. Exercising personal jurisdiction over VocalTec Ltd on these facts would not be inherently unfair or unreasonable.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that VocalTec Ltd's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 17] is **DENIED**.

BY THE COURT:

Ann Montgomery

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: December 4, 2000