UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Multi-Tech Systems, Inc., a
Minnesota Corporation,

Plaintiff,

vs. REPORT AND RECOMMENDATION

Vocaltec Communications, Inc., a
Delaware corporation,

Defendant. Civ. No. 00-1541 (ADM/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 1st day of March, 2001.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant VocalTec Communications, Inc. ("VocalTec") for a Separate Trial on the Issues of Damages and Willful Infringement, and for a Stay of Discovery on such issues, and upon the Motion of the Plaintiff Multi-Tech Systems, Inc. ("Multi-Tech") to Compel Discovery on the damages issues.

A Hearing on the Motions was conducted on February 15, 2001, at which time Multi-Tech appeared by Kevin D. Conneely and Misti Nelc, Esqs., and VocalTec appeared by Meredith M. Addy and William

FILED MAR 01 2001
CLERK

H. Frankel, Esqs. For reasons which follow, we recommend that the Defendant's Motion to Bifurcate be denied, that its Motion to Stay Discovery be denied, and we recommend that the Plaintiff's Motion to Compel Discovery be granted.[1]

## II. Discussion

This action involves five separate patents-in-suit, and Multi-Tech's contentions implicate about seventeen of the claims that are recited in those patents. As here pertinent, VocalTec urges a bifurcation in the Trial of this matter, in order that the issue of liability may be separated from the issues of damages, and of the willfulness of VocalTec's infringement -- if infringement were to be found. According to VocalTec, such a bifurcation would minimize the complexity of the case and, if VocalTec is correct in its denial of liability, or even a portion of that liability, then it would be spared some, and potentially all, of the expense of any discovery, or Trial, concerning the damages and willfulness issues. VocalTec also argues that these same interests, in avoiding com-

[1]Ordinarily, on such pretrial matters we would not frame our resolution in the form of a Recommendation, but the issue of bifurcation was referred to us by the District Court, the Honorable Ann D. Montgomery presiding, and, since the issue impacts upon the manner in which this case will be tried, the ultimate decision on such an issue should be deferred to the Trial Court. The remaining discovery issues -- whether damages discovery should be stayed or compelled -- is driven by our Recommendation and, therefore, we also defer a final ruling on those issues to the Trial Court.

plexity and unnecessary expense, justify the staying of discovery on the issues of damages and willfulness until such time as a Jury has returned its Verdict on the threshold issues of liability and validity.

In contrast, Multi-Tech is concerned that VocalTec's effort to bifurcate the Trial, and to stay discovery, is a thinly-veiled attempt at interminable delay. In this respect, we are substantially in agreement with Multi-Tech, as we find no clear benefit in staying discovery, or in a bifurcation of the issues, so as to require separate Trials.

A. Standard of Review. Necessarily, in considering a Motion to Bifurcate, our analysis turns to Rule 42(b), Federal Rules of Civil Procedure, which provides as follows:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

As the Rule makes clear, a Court may separate claims, and issues, if the separation would avoid prejudice, would promote convenience, or would result in judicial economy. See, Laitram Corp. v. Hewlett-Packard Co., 791 F. Supp. 113, 115 (E.D. La. 1992);

Kimberly-Clark Corp. v. James River Corp., 131 F.R.D. 607, 608 (N.D. Ga. 1989); Organic Chems., Inc. v. Carroll Prods., Inc., 86 F.R.D. 468, 469 (W.D. Mich. 1980).[2] Of course, a Court may elect to bifurcate claims, and issues, into separate Trials, or into separate phases of the same Trial, and decisions on bifurcation are committed to the sound discretion of the Court. See, O'Dell v. Hercules, Inc., 904 F.2d 1194, 1201-02 (8th Cir. 1990); Getty

---

[2]In Kimberly-Clark Corp. v. James River Corp., 131 F.R.D. 607, 608-09 (N.D. Ga. 1989), the Court identified a series of additional factors which could impact upon a decision to bifurcate:

> In addition to the more general factors set forth in Rule 42(b); i.e., (1) convenience; (2) prejudice; (3) expedition; and (4) economy; a court reviewing a motion for separate trials may properly consider (5) whether the issues sought to be tried separately are significantly different; (6) whether they are triable by jury or the court; (7) whether discovery has been directed to a single trial of all issues; (8) whether the evidence required for each issue is substantially different; (9) whether one party would gain some unfair advantage from separate trials; (10) whether a single trial of all issues would create the potential for jury bias or confusion; and (11) whether bifurcation would enhance or reduce the possibility of a pretrial settlement.

See also, THK America, Inc. v. NSK Co. Ltd., 151 F.R.D. 625, 632 (N.D. Ill. 1993).

As our discussion in the text of this Order reveals, where appropriate, we have included a consideration of the expanded set of relevant factors in our analysis of the operative elements that have been specifically identified in Rule 42(b).

Petroleum Corp. v. Island Trans. Corp., 862 F.2d 10, 15 (2nd Cir. 1988); Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1212 (Fed. Cir. 1987).

B. Legal Analysis. Not surprisingly, a decision to bifurcate depends upon the facts of each individual case, see, Moss v. Associated Transp., Inc., 344 F.2d 23, 25 (6th Cir. 1965); Acme Resin Corp. v. Ashland Oil, Inc., 689 F. Supp. 751, 752 (S.D. Ohio 1987), and, in making such a determination, the Courts have favored a balancing of the Rule 42(b) factors -- namely, convenience, the avoidance of prejudice, and judicial economy. See, Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19, 22 (3rd Cir. 1984); Witherbee v. Honeywell, Inc., 151 F.R.D. 27, 29 (N.D.N.Y. 1993); Laitram Corp. v. Hewlett-Packard Co., supra at 115. Accordingly, our analysis turns to the factors expressly identified in Rule 42(b).

1. The Element of Convenience. Central to the concept of convenience is whether the triable issues involve evidentiary overlap, which would require the testimony of the same witnesses, and related repetitions of proof. See, Laitram Corp. v. Hewlett-Packard Co., supra at 117; Organic Chems., Inc. v. Carroll Prods., Inc., supra at 470. As the adducible proof tends to overlap, from issue to issue, the parties, the witnesses, and the Court, would be increasingly inconvenienced by the reiteration of evidence, during

the separate phases of the same Trial, or at separate Trials. See, Laitram Corp. v. Hewlett-Packard Co., supra at 117.

Here, VocalTec contends that this case will entail only minimal -- and, therefore, acceptable -- overlap, while Multi-Tech insists that the overlap would be considerable. In support of its contention, VocalTec relies on a decision in which the prospect of a limited degree of overlap was found to be an insufficient basis upon which to deny bifurcation. See, Lemelson v. Apple Computer Inc., 28 U.S.P.Q.2d 1412, 1422-24 (D. Nev. 1993); see also, Air-Shields v. BOC Group, 23 U.S.P.Q.2d 1955, 1956-57 (D. Md. 1992); White Chemical Corp. v. Walsh Chemical Corp., 116 F.R.D. 580, 582 (W.D.N.C. 1987); Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 587 F. Supp. 1112, 1116-17 (D. Del. 1984). In contrast, Multi-Tech references those cases which recognize that significant overlap is contraindicative to bifurcation. See, e.g., Spectra-Physics Lasers, Inc. v. Uniphase Corp., 144 F.R.D. 99, 101 (N.D. Cal. 1992); Joy Techs., Inc. v. Flakt, Inc., 772 F. Supp. 842, 848 (D. Del. 1991). Not surprisingly, these facially disparate rulings are consistent in relying upon the individualized facts, which either counsel a bifurcated or a unified Trial.

According to Multi-Tech, the evidence relating to the liability, and the validity issues, unavoidably and substantially

overruns the intended proof on the damages issues. At this juncture, it appears that Multi-Tech's damage theories are premised upon the notion of a reasonable royalty. Under that theory of recovery, the measure of damages will be dependent upon the Jury's application of the fifteen factors that were first enunciated in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). In its view, Multi-Tech believes that much of the evidence, which is potentially relevant to the "Georgia-Pacific analysis," will also be highly probative of the threshold issue of liability.

Multi-Tech highlights those cases which have denied a bifurcation of damages, from the liability issues, by emphasizing the potential overlap between the issue of commercial success -- which is relevant to the infringement defense of obviousness -- and the underlying damage issues. See, Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc., 45 F.3d 1550, 1555 (Fed. Cir. 1995); see also, Caterpillar, Inc. v. Deere & Co., 1997 WL 17798 *3 (N.D. Ill. 1997); IPPV Enters. v. Cable/Home Communication Corp., 26 U.S.P.Q.2d 1714, 1716-17 (S.D. Cal. 1993); Mellon v. Beecham Group PLC, 17 U.S.P.Q.2d 1149, 1154 (D.N.J. 1989). Multi-Tech also points out that, since it is a relatively small company, several of the same witnesses would be required to testify during both the liability and damages Trials. See, e.g., Home Elevators, Inc. v.

Millar Elevator Serv. Co., 933 F. Supp. 1090, 1092 (N.D. Ga. 1996) (denying Motion to Bifurcate where several witnesses would need to testify at both Trials, and noting that "[p]lainly, judicial economy is not served if the same witnesses have to be called at both trials.").

Although VocalTec disputes these contentions, as the party seeking bifurcation, it carries the burden of demonstrating that separate Trials, or separate phases of the same Trial, would promote the interests of convenience. We are not persuaded, however, that it has carried its burden in this respect. Accordingly, we conclude that the element of convenience does not weigh in favor of bifurcation.

2. The Avoidance of Prejudice Element. As to this aspect of our analysis, we must balance two types of competing forms of prejudice. In patent cases, those who seek bifurcation typically argue that they will be prejudiced by a single Trial, since the complexity of these cases may lead to Jury confusion, with resultant prejudice to all concerned. See, Mag Instrument, Inc. v. J. Baxter Brinkman Int'l Corp., 123 F.R.D. 543, 545 (N.D. Tex. 1988); Organic Chems., Inc. v. Carroll Prods., Inc., supra at 469-70. The concern is two-fold. First, there is the fear that trying all of the issues at once may, unnecessarily, clutter the Record, and unduly complicate the Jury's task. In addition, there

is the concern that a unified Trial of the issues could result in the Jury's consideration of evidence which is appropriate as to one issue, but not as to another. See, Instrument, Inc. v. J. Baxter Brinkman Int'l Corp., supra at 545; Organic Chems., Inc. v. Carroll Prods., Inc., supra at 469-70.

The second form of prejudice relates to the concern of both the nonmoving party, and the public's interest at large, that prolonged delays can result from separate Trials, for which separate phases of discovery must be pursued. See, Laitram Corp. v. Hewlett-Packard Co., supra at 116; Joy Techs., Inc. v. Flakt, Inc., supra at 849. Given the fact that VocalTec has coupled its request for bifurcation, with an opportunity to conduct successive waves of discovery, we see a substantial and, we think, an unavoidable prospect for interminable delay if bifurcated Trials were to be ordered.

In response to Multi-Tech's prediction of undue prejudice, VocalTec urges that the factors of complexity, and of Jury confusion, should weigh heavily here. Not surprisingly, VocalTec characterizes this case as an unusually complex one, in which the Jurors will be overwhelmed with technical details relating to the issues of liability, damages and willfulness -- if all three issues were to be tried at one time. We do not share VocalTec's assertion, however, that bifurcation is the norm in patent actions, as

the reported decisions forcefully demonstrate that such is not the case.[3] See, e.g., THK America, Inc. v. NSK Co. Ltd., 151 F.R.D.

---

[3]VocalTec particularly stresses that trying liability and willful infringement together could adversely impact upon their attorney-client confidences. Typically, an allegation of willfulness presupposes that the supposed infringer had knowledge of the infringee's patent rights. As a consequence, a common defense to a charge of willful infringement is the infringer's assertion that it placed reliance upon the advice of its counsel, that no infringement would occur. Here, VocalTec notes that, as a defense to the charge of willfulness, the parties could possibly assert, at Trial, their reliance upon certain attorney opinion letters, which are purported to have advised them, at the developmental stage of their competing devices, whether they were in danger of infringing upon existing patents. See, e.g., Keyes Fibre Co. v. Packaging Corp. of America, 763 F. Supp. 374, 375 n. 1 (N.D. Ill. 1991).

Therefore, VocalTec contends that trying the liability and willful infringement issues together might compel the divulgence of those attorney confidences, with the prospect that the Jury might rely upon them in resolving the liability issue, and not restrict their consideration of such evidence to the issue of willfulness. As their argument continues, a joint Trial of these issues would force them to prematurely waive their attorney-client privilege, or to waive their right to rely upon the opinion letters in defense of the willfulness claim. Moreover, VocalTec argues that the attorney-client privilege could be needlessly sacrificed if they should win on the liability issue for, thereafter, the willfulness claim need not be addressed.

In support of the proposition that such a situation warrants bifurcation, VocalTec relies on the Federal Circuit's decision in Quantum Corp. v. Tandon Corp., 940 F.2d 642 (Fed. Cir. 1991), in which it stated:

> An accused infringer * * * should not, without the trial court's careful consideration, be forced to choose between waiving the [attorney/client] privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question

(continued...)

625, (N.D. Ill. 1993); Laitram Corp. v. NEC Corp., 28 U.S.P.Q.2d 1157 (E.D. La. 1993); Spectra-Physics Lasers, Inc. v. Uniphase Corp., supra; Output Tech. Corp. v. Dataproducts Corp., 22 U.S.P.Q.2d 1072 (W.D. Wash. 1991); Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc., 707 F. Supp. 1429, 1435 (D. Del. 1989); Brad Ragan, Inc. v. Shrader's Inc., 89 F.R.D. 548 (S.D. Ohio 1981).

---

(...continued)

> of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court, in camera, reveal that the defendant is indeed confronted with this dilemma.

Id. at 643-44.

While we agree with VocalTec that these concerns are substantial, at this point, they are merely theoretical concerns, and premature, at best. First, Multi-Tech has yet to directly assert willfulness. Moreover, the Court in Quantum did not state that bifurcation is the solution when there is the potential of such a dilemma. Rather, it stated that bifurcation should be seriously considered once there has been an in camera review of the documents alleged to create such an issue. See, Quantum Corp. v. Tandon Corp., supra; Real v. Bunn-O-Matic Corp., 195 F.R.D. 618, 625 (N.D. Ill. 2000); see also, Spectra-Physics Lasers, Inc. v. Uniphase Corp., 144 F.R.D. 99, 101 (N.D. Cal. 1992)(denying bifurcation of willful infringement issue where Defendant did not even allege that it faced the problem depicted in Quantum, and where the Defendant failed to tender the attorney/client communication for in camera inspection). Thus, even though VocalTec may eventually face the dilemma outlined in Quantum, at this point, such a theoretical concern does not militate towards granting a bifurcation of the Trial.

The crux of VocalTec's argument is that the damages issue in this case is particularly difficult. According to VocalTec, the "reasonable royalty" analysis, which requires the consideration of the fifteen factors outlined in Georgia-Pacific factors, is especially difficult because of the relevant market analysis that will have to be undertaken by the parties. VocalTec highlights the fact that Multi-Tech has chosen to sue a number of parties, which will affect the calculation of damages in this case.

The mere fact that the damages analysis in this case will be based on "reasonable royalty" does not impel a decision to bifurcate. Were such the case, virtually every patent action would require bifurcation, which we have already noted is not the norm. Accord, Schneider (USA), Inc. v. Cordis Corp., 1993 U.S. Dist. LEXIS 15213, at *11 (D. Minn. May 9, 1993) (noting that if the Court adopted the Defendant's contention on the complexity of damages in a patent infringement case, and bifurcated the Trial "because a jury must consider various factors in calculating [reasonable royalty and lost profit] damages, every patent case would be bifurcated," since the damages issues are similar in most patent cases). Moreover, as we noted at the Hearing, any relevant market analysis that will have to be undertaken will be Multi-Tech's burden. Furthermore, VocalTec, along with a number of other parties whom Multi-Tech initially sued together, asked this Court

to sever the Defendants, in order to allow the actions to proceed separately, which was ultimately the decision of the Court. Now, VocalTec suggests that the damages determination here is complicated by the existence of severed actions. We are not so persuaded, and we find that the element of prejudice does not support the bifurcation VocalTec requests.

3. The Element of Judicial Economy. The interests of judicial economy are served when the command of Rule 1, Federal Rules of Civil Procedure, is honored, such that the resolution of this case would be as swift and economical as justice should require. See, Laitram Corp. v. Hewlett-Packard Co., supra at 117; Brad Ragan, Inc. v. Shrader's Inc., supra at 550. In this respect, VocalTec contends that judicial economy, and expedition, would best be served if the Court ordered the bifurcation of this Trial, and also precluded discovery on any issue other than VocalTec's liability for patent infringement. We disagree. As we have already noted, there is potentially a number of areas in which there will be an unavoidable overlap in discovery, as well as in the evidence to be offered at Trial. Moreover, as the Court observed, in Laitram Corp. v. Hewlett-Packard Co., supra at 117:

> If the Court limits discovery during the first period to liability only, the parties are likely to come to the Court with repeated disputes over how requested material is related to liability, damages, state of mind, or all

> these issues. The Court will not escalate the paper war that is surely impending in this case.

Accord, Air-Shields v. BOC Group, supra at 1958; Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc., supra at 1435. This case would be no exception. To date, we have entertained, as it is our obligation to entertain, numerous disputes which are more compelling in their form, than in their stated function. To bifurcate discovery would, in our view, merely foster further such disputes.

More importantly, we are convinced that continued, consolidated discovery will properly promote the potential of an amicable resolution of the parties' dispute, since both sides will be fully advised of the risks attendant to a full Trial on the merits. See, Laitram Corp. v. Hewlett-Packard Co., supra at 117. As a result, we find and conclude that a bifurcation of the Trial, or of discovery, so as to separately address the issues of liability, damages and willfulness, will not further the interests of judicial economy, or the prospect of a speedy -- but just -- Trial. Therefore, we recommend that VocalTec's Motion to Bifurcate the Trial, and to Stay Discovery, be denied, and that Multi-Tech's Motion to Compel Discovery on Damages be granted.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Defendant's Motion for Separate Trials on the Issues of Damages and Willful Infringement [Docket No. 31] be denied.

2. That the Defendant's Motion to Stay Discovery on Damages and Willfulness [Docket No. 31] be denied.

3. That the Plaintiff's Motion to Compel Discovery on Damages [Docket No. 34] be granted.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 16, 2001**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 16, 2001**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.